UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| N.T., *et. al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 11-676 (RMC) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

N.T. is a young child with attention-deficit hyperactivity disorder ("ADHD"). She is currently attending a private school that educates disabled children, and her parents want the District to pay for the tuition and costs of the school. The question is whether the District of Columbia Public Schools ("DCPS") can provide N.T. a free, appropriate public education ("FAPE") and, if not, to what extent it must reimburse N.T.'s parents for her private school placement. Because DCPS can provide N.T. a free and appropriate education, the Court will deny Plaintiffs' request for reimbursement and grant Defendant's motion for summary judgment.

I. FACTS

From pre-kindergarten through the end of first grade, N.T. attended The River School in Northwest Washington, D.C. The River School is an "inclusion"-based private school meaning that children with special educational needs who attend the school spend most of their time learning with non-disabled students. N.T. was not initially placed in The River School as a child with special educational needs and did not have an Individualized Education Program

("IEP") during any of the five years she attended The River School.[1] At The River School, N.T. was placed in small classes with approximately fourteen students, and the students were regularly taught in smaller groups of one to four children.

During her first grade year (from 2008-2009), N.T. struggled academically and socially. The River School recommended that N.T. repeat the first grade, and she did so. That fall (in 2009), N.T.'s parents referred her to a psychologist for a neuropsychological assessment. The psychologist diagnosed N.T. with ADHD. N.T. was able to make some progress academically and socially, but she continued to struggle academically, had difficulty with her peers, and was frequently physically aggressive. Accordingly, her parents began to look at other school options – both public and private. Her parents visited Key Elementary School, the local public school N.T. would otherwise have attended. Her parents met with the principal, classroom teachers, and special education coordinator at Key Elementary. On April 23, 2010, N.T.'s parents initiated a referral to DCPS to evaluate N.T.'s eligibility for special education services.

In addition to visiting Key Elementary, N.T.'s parents also looked at The Lab School of Washington, a private school that serves moderately to severely disabled students. In the same month that N.T.'s parents initiated a referral to DCPS, they also signed an enrollment contract and paid a deposit toward The Lab School's annual tuition. As early as April 2010, after having met multiple times with Key Elementary staff, N.T.'s parents decided to send her to The Lab School.

---

[1] The River School is "an 'inclusion' school where a small number of children with hearing loss are instructed in the same classroom with mostly nondisabled peers. [N.T.] did not attend [River School] as a hearing impaired student . . . ." Hearing on Decision ("H.O.D.") at 4.

On August 13, 2010, DCPS convened an IEP meeting to determine N.T.'s eligibility under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq*., for special education services.  N.T.'s parents, educational consultant, and attorney attended the meeting along with a DCPS psychologist, social worker, speech/language pathologist, general education teacher, and special education teachers.  The IEP team reviewed N.T.'s evaluations and data and found her eligible for special education services based upon her ADHD diagnosis.  The team also decided that additional assessments were required to determine if N.T. would qualify as a student with a specific learning disability.  An educational assessment, occupational therapy assessment, and classroom observation were ordered.  The additional assessments were completed without incident except that, based upon The Lab School's guidelines, only the occupational therapist from DCPS (and not the special education coordinator, speech pathologist or psychologist) was able to conduct a classroom evaluation.  When the IEP team met on August 13th, N.T.'s mother had already decided that N.T. would attend The Lab School and wanted DCPS to pay for that unilateral private placement.

On October 13, 2010, DCPS convened a follow up meeting and proposed an IEP for the 2010-2011 school year.  DCPS proposed that N.T. receive education in a general education setting of fourteen hours per month of written expression, two hours per month of speech language pathology, and one hour per month of behavioral support services.  DCPS further proposed six hours of written expression, two hours of speech language pathology, and one hour of behavioral support services per month outside a general education setting.  The IEP did not include a requirement that N.T. be educated in smaller class sizes or provide for occupational therapy or other services Plaintiffs desired.  Plaintiffs rejected the IEP at the

October 13, 2010 meeting and indicated that they planned to continue N.T.'s placement at The Lab School at DCPS' expense.

Two weeks later, Plaintiffs filed a request for an administrative due process hearing alleging that DCPS had denied N.T. a free, appropriate public education and seeking reimbursement from DCPS for the tuition and costs of The Lab School.  Specifically, Plaintiffs presented five issues to be resolved at the hearing:

1. Whether DCPS failed to complete a special education evaluation and IEP development within IDEA timelines;

2. Whether the omission of goals and services for reading, mathematics, social and occupational therapy in the IEP was a denial of a FAPE;

3. Whether the Speech-Language services in the IEP were inadequate to provide a FAPE;

4. Whether the proposed provision of IEP services in a general education setting was a denial of a FAPE; and

5. Whether N.T.'s placement at The Lab School is proper under the IDEA.

The hearing was held in early January 2011, and the Hearing Officer found for DCPS on four of the five issues.  With respect to Issue # 4, whether the IEP's proposed services in the general education setting denied N.T. a FAPE, the Hearing Officer concluded that N.T. needed a small group setting for all of her core academic subjects.  Although DCPS' special educational coordinator testified that N.T. would be instructed in small groups at her level at Key Elementary, the Hearing Officer found that the requirement for small group instruction in core academic subjects needed to be explicit in the IEP.  The Hearing Officer ordered DCPS to

reconvene N.T.'s IEP team and develop an IEP that provided for small group settings for core subjects. Although the IEP deprived N.T. of a FAPE, the Hearing Officer did not order reimbursement for private-school tuition because the IDEA requires disabled children to be educated with nondisabled peers to the greatest extent appropriate. In this case, N.T. had shown improvement at The River School, and The Lab School would not provide an inclusive education environment.

The Plaintiffs disagreed with the Hearing Officer's decision and filed the present suit on April 6, 2011. Both parties move for summary judgment based on the administrative record. Neither party has asked the Court to hear additional evidence.

## II. LAW

The IDEA ensures that "all children with disabilities have available to them a free appropriate pubic education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The IDEA guarantees children with disabilities the right to a FAPE. *Id*. In seeking an appropriate education for students with disabilities, the child's parents, teachers, school officials, and other professionals collaborate to develop an IEP to meet the child's unique needs. *See* 20 U.S.C. § 1414(d)(1)(B). "The IEP must, at a minimum, 'provide personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.'" *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005) (quoting *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 203 (1982)).

Local school officials utilize the IEP to assess the student's needs and assign a commensurate learning environment. *See* 20 U.S.C. § 1414(d)(1)(A). The IEP team, consisting of the student's parents, teachers, and other local education personnel, examines the student's educational history, progress, recent evaluations, and parental concerns prior to implementing a free appropriate public education for the student. *Id*. To determine whether a FAPE has been provided, courts must determine whether: (1) the school complied with the IDEA's procedures; and (2) the IEP developed through those procedures was reasonably calculated to enable the student to receive educational benefits. *Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1312 (11th Cir. 2003).

While the District of Columbia is required to provide students with a public education, it does not guarantee any particular outcome or any particular level of education. *Rowley*, 458 U.S. at 192; *Dorros v. District of Columbia*, 510 F. Supp. 2d 97, 100 (D.D.C. 2007). If a parent objects to the identification, evaluation, or educational placement of a student, or the provision of a FAPE, 20 U.S.C. § 1415(b)(6), the parent may seek an impartial due process hearing. *Id*. § 1415(f)(1). If the parent is dissatisfied with the outcome of that hearing, (s)he may appeal the decision to a state court or a federal district court. *See* 20 U.S.C. § 1415(i)(2)(A).

In evaluating a hearing officer's decision in an IDEA case such as this one, the court reviews the administrative record, may hear additional evidence at the request of a party, and bases its decision on the preponderance of the evidence, granting such relief as deemed appropriate. 20 U.S.C. § 1415(i)(2)(B)(iii). The court gives "due weight" to the hearing officer's decision and does not substitute its own view of sound educational policy for that of the hearing officer. *See Rowley*, 458 U.S. at 206. Moreover, the burden of proof is with the party

challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong." *Reid*, 401 F.3d at 521.

### III. ANALYSIS

Plaintiffs contend that the IEP at issue violated the IDEA because it did not provide for small group instruction in core academic subjects. Plaintiffs therefore argue that DCPS should be required to reimburse the tuition and cost for attending The Lab School. Plaintiffs do not contest the other findings of the Hearing Officer (*e.g.*, that Plaintiffs failed to meet their burden in demonstrating that speech-language services in the IEP were inadequate, or that the omission of reading and mathematics goals and services in the IEP did not deny N.T. a FAPE). Accordingly, the Court will limit its analysis to whether the lack of required small group instruction violated N.T.'s right to a FAPE, and if so, what constitutes the correct remedy.

Defendant seeks affirmance of the Hearing Officer's decision on all respects. DCPS does not challenge the determination that the IEP violated the IDEA by not providing for small class sizes, but contends that reimbursement is improper because DCPS can provide N.T. with a FAPE, the parents' conduct should preclude reimbursement, and the parents have not demonstrated that the The Lab School is an appropriate placement under the IDEA. Because DCPS has waived any argument that the IEP provided N.T. a FAPE, *see, e.g., Hopkins v. Women's Div., Bd. of Global Ministries*, 238 F.Supp.2d 174, 178 (D.D.C. 2002), the Court looks to the appropriate remedy for the violation, s*ee, e.g., N.S. ex rel. Stein v. District of Columbia*,

709 F.Supp.2d 57, 73 (D.D.C. 2010).[2]  Reimbursement for tuition and cost at The Lab School is, in this case, an inappropriate remedy for at least three reasons.

First, Plaintiffs incorrectly argue that private school placement is the appropriate remedy solely because the IEP was inadequate.  An inadequate IEP is a necessary but insufficient condition for private school placement and reimbursement.  Although the District must pay for private school placement "[i]f no suitable public school is available[,] . . . if there is an appropriate public school program available . . . the District need not consider private placement, even though a private school might be *more* appropriate or better able to serve the child." *Jenkins v. Squillacote*, 935 F.2d 303, 305 (D.C. Cir. 1991) (citations and quotations omitted).  In the present case, the parents have not even argued, let alone demonstrated, that Key Elementary or another D.C. public school could not provide N.T. an appropriate education with smaller class sizes for N.T.'s core academic subjects.  Indeed, DCPS' special educational consultant anticipated that N.T. would receive such instruction at Key Elementary, and the Hearing Officer ordered that the IEP be modified to provide for small group instruction.  If DCPS had been unwilling or unable to modify the IEP to meet N.T.'s needs for small group instruction, then private placement and reimbursement might be an appropriate remedy.  *See, e.g. Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993).  That is simply not this case.

Second, as the Hearing Officer noted, The Lab School would not provide the least restrictive environment ("LRE") for N.T.'s education.  "In addition to IDEA's requirement the

---

[2] Additionally, there is ample support in both the administrative hearing and the administrative record that the IEP was deficient by not providing for small class sizes for N.T. *See, e.g.,* H.O.D. at 17; A.R. at 78 ("During core academic time, N.T. continues to benefit from small group instruction . . . . She is able to focus better when she is in a small group.")

state provide each student with some educational benefit, the student must be placed in the least restrictive environment to achieve the FAPE." 20 U.S.C. § 1412(a)(5)(A). Removing a child with disabilities "from the regular education environment occurs only when the nature or severity of the disability is such that education in regular classes cannot be achieved satisfactorily." 34 C.F.R. § 300.550; *see also* 20 U.S.C. § 1412(a)(5)(A) (a disabled child is to participate in the same activities as non-disabled children to the "maximum extent appropriate"); *Roark ex rel. Roark v. District of Columbia*, 460 F.Supp.2d 32, 43 (D.D.C. 2006) ("The IDEA requires school districts to place disabled children in the least restrictive environment possible.")

      Given Congress's preference for inclusion-based education, Plaintiffs must show that a non-general education is appropriate in N.T.'s case. They have failed to do so. As the Hearing Officer found, N.T. was able to receive educational benefit at The River School, an inclusion-based school, for five years. Even Plaintiffs' educational consultant admitted that with substantial intervention, N.T. was able to make educational progress in an inclusive setting. H.O.D. at 5. N.T.'s written reports at River School confirm this. *See, e.g.,* A.R. 59-60 ("N.T. has made some progress socially since the beginning of the girl group. . . . [N.T.] has begun to identify the beginning, medial, and final sounds of words . . . . [N.T.'s] visual recognition of first-grade sight words is strong, and she correctly identified 95% of the Dolch Sight-Word list;"); A.R. 78 ("[N.T.] continues to show improvement during English Language Arts . . . . [N.T.] is becoming more successful in math . . . [and] is comfortable asking her teachers for help and is open to suggestions for problem solving.") Unlike The River School, the Lab School does not

accept non-disabled students. Thus, The Lab School would not be the least restrictive environment for N.T. to learn.[3]

Third, although plaintiffs spend much time extolling the virtues of The Lab School with its smaller class sizes and unquestioned expertise, the argument largely misses the mark. The question before the Court is not whether The Lab School could better educate N.T. than a public school but whether N.T. could receive a FAPE at a public school. *See, e.g., Kerkhman,* 931 F.2d at 88. Because DCPS can craft an appropriate IEP to provide a FAPE, it is not required to pay for N.T.'s placement at The Lab School. *Jenkins,* 935 F.2d at 305; *cf. School Comm. of Town of Burlington, Mass. v. Dept. of Educ. of Mass.*, 471 U.S. 359, 373-74 (1985) (parents who unilaterally place their children in private school "do so at their own financial risk.")

## IV. CONCLUSION

For the reasons stated, Plaintiffs' motion for summary judgment [Dkt. # 8] will be denied and Defendant's cross motion for summary judgement [Dkt. # 10] will be granted. A memoralizing Order accompanies this Memorandum Opinion.

Date: January 11, 2012          /s/
                                ROSEMARY M. COLLYER
                                United States District Judge

---

[3] Plaintiffs are correct that a parental placement need not be the least restrictive environment. *See Warren G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 83-84 (3rd Cir. 1999); *Knable v. Bexley City Sch. Dist.*, 238 F.3d 775, 770 (6th Cir. 2001). They are incorrect, however, in arguing that the Hearing Officer could not consider whether The Lab School was the least restrictive environment in evaluating whether private placement was the proper remedy. *See, e.g., Branham v. District of Columbia*, 427 F.3d 7, 12 (D.C. Cir. 2005)*; Kerkham v. Superintendent, D.C. Public Schools*, 931 F.2d 84, 87 (D.C. Cir. 1991).